UNITED STATES BANKRUPTCY
COURT SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

IN RE:

    **ADRIEN RICHEMOND**               CASE NO. **19-12823-LMI**
    **MADELEINE RICHEMOND**
    Debtor           /                      Chapter **13**

**ADRIEN RICHEMOND** and
**MADELEINE RICHEMOND**
    Plaintiffs,
v.                                          ADV. CASE NO.
**EQUITYMAX INC.,** a Florida Corporation,
**TITLE QUEST INVESTMENTS LLC.,**
A Florida Limited Liability company,
**UNITED FINANCIAL COUNSELORS,**
**INC,.** A Florida corporation, and
**JASON WALOWITZ**, an individual, and
**STAN L. RISKIN**, an individual,

    Defendants.       /

**ADRIEN RICHEMOND and MADELEINE RICHEMOND COMPLAINT FOR**
**NEGLIGENCE, FRAUD, CONSPIRACY, and TO DETERMINE**
**VALIDITY, EXTENT, OR PRIORITY OF LIENS,**

    Plaintiffs debtors ADRIEN RICHEMOND and MADELEINE RICHEMOND (hereinafter collectively "Richemonds" or "Plaintiffs"), by and through undersigned counsel, files this Complaint to for Negligence, Fraud, Conspiracy, Determine Validity, and to Determine Extent or Priority of Liens against defendants EQUITYMAX INC., TITLE QUEST INVESTMENTS LLC., UNITED FINANCIAL COUNSELORS, INC., and JASON WALOWITZ, and STAN L. RISKIN (hereinafter collectively "Defendants"),and would allege as follows:

    1. This is a cause of action pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H), (K), and (O) and 1334; and Federal Rule of Bankruptcy Procedure 7001 et. seq., and is a core proceeding.

**The Parties**

1. The plaintiffs Adrien Richemond and Madeleine Richemond (hereinafter "Plaintiffs or Debtors") filed for bankruptcy protection under Chapter 13 on the 1st day of March 2019 in the Southern District of Florida, Miami-Dade Division and were issued Case No. 19-12823-LMI.

2. Defendant Stan L. Riskin, Esquire (hereinafter "Riskin"), represented the debtors in a prior bankruptcy Chapter 13 case before this Court, Case No. 12-19723-LMI (hereinafter "prior case").

3. Defendant Equitymax, Inc., (hereinafter "Equitymax"), holds an alleged promissory note and mortgage on the debtors' property with a street address of 8275-8277 NW 1 Place Miami, Florida 33150 placed during the pendency of the debtors' prior Chapter 13 Case.

4. Defendant United Financial Counselors, Inc., (hereinafter "United) is a mortgage broker that handled and placed the alleged promissory note and mortgage with Equitymax.

5. Defendant Jason H Walowitz (hereinafter "Walowitz"), is the director, and officer, registered agent, and chief Executive officer of defendant United.

6. Title Quest Investments LLC (hereinafter "Title"), a title insurer was engaged due public records and issue a title policy regarding the mortgage from Equitymax of the debtors' real property.

**Factual and Procedural Background**

7. Attorney Stan Riskin filed as counsel for debtors a Chapter 13 case in the Southern District of Florida, Miami-Dade Division, Case Number 12-19784-BKC-LMI (hereinafter "prior Case).

8. The Debtors Schedule A to their bankruptcy petition [DE 1 prior case] listed an

interest in a Real Property located at 8275-8277 NW 1 Place Miami, Florida 33150 (the "Subject Property").

9. The purpose of the prior case was in part filed with the intention to modify the promissory note and mortgage on the subject property by seeking a court determination of value.

10. The subject property was listed on the debtors' schedules a non-homestead real property [DE 1 prior case].

12. Debtors' Schedule D to their bankruptcy petition [DE 1 prior case], showed that the subject property was encumbered by a promissory note and mortgage to Wells Fargo (the "Secured Lender").

13. On June 29, 2012, debtors filed a Motion to Value and Determine Secured Lien on Real Property Held By Wells Fargo Bank, N.A. at [DE 25 prior case] (Referencing Real Property located at 8275 NW 1 Place, Miami, Florida 33150).

14. On August 17, 2012, the Court issued an Order granting the debtors' Motion to Value [DE 31 prior case], granting the Secured Lender a secured claim on Subject property in the amount of one hundred twenty five thousand four hundred twenty six dollars ($125,426.00) and an unsecured, deficiency claim of one hundred twenty nine thousand five hundred dollars and sixty cents ($129,500.60).

15. On August 23, 2012 the Debtors Chapter 13 Plan [DE 10 prior case] (the "Plan") was confirmed by Order [DE 34 prior case]. The Plan provided for cramdown treatment to Secured Lender's claim, in the principle amount of one hundred twenty five thousand four hundred twenty six dollars ($125,436.00), as a claim to be paid at 5.25% per annum interest, on the following term:

      a.        $1,000.00 per month, months 1-20 of the plan

      b.        $1,191.55 per month, Months 21-59 of the plan

      c.        $87, 392.07 in Month 60 of the Plan (month 60 = April 23, 2017)

16. The Debtors last plan payment was due in the amount of ninety seven thousand two hundred thirteen dollars and forty one cents ($97,213.41).  See Plan [DE 10 prior case]

17. Debtors did not have the funds to complete the last month's plan payment and prior to the last plan payment coming due Riskin, referred Debtors to Walowitz and his company United.

18. On the 3rd day of May 2017 an agreed order [DE 40] was entered by the Court granting Wells Fargo's Motion to Clarify its treatment under the confirmed Chapter 13 Plan [DE 10 prior case].

19. The Agreed order [DE 40 prior case] required the debtors to pay an additional eighty six thousand one hundred twenty one dollars and sixty three cents ($86,121.63) for accrued expenses incurred during the pendency of the case and advanced by Wells Fargo within thirty (30) days of the date of the Order or the Court would grant an Order vacating its order valuing the subject property [DE 31 prior case].

20. The debtors who are not sophisticated or educated in the law or its procedures were unaware of the entry of the Agreed Order [DE 40 prior case] and its effect who relied on and continued to place their faith in the advice of Riskin.

21. The defendants acting individually or in coordination with one another advised and assisted the Debtors in forming and transferring title of of their homestead property to a Limited Liability Company (hereinafter "LLC"), for the purposes of obtaining a loan and paying off the bankruptcy plan.

22. On or about the 28th day of August 2017, an LLC was formed named 8275 NW 1st Place LLC, a Florida Limited Liability Company (hereinafter "LLC").

23. On or about the 30th day of August 2017, the LLC borrowed one hundred fifteen thousand dollars ($115,000.00), from Equitymax and gave to it a promissory note and mortgage.

24. Title acted as the settlement agent and issued a title policy.

25. The closing statement (hereinafter "HUD-1'), indicted that the loan proceeds were to be paid to Wells Fargo to pay off the first mortgage eighty seven thousand three hundred ninety two dollars and seven cents ($87,392.07) with settlement charges of twenty seven thousand six hundred seven dollars and ninety three cents ($27,607.93) distributed in part to and between the defendants.

26. On the 30th day of August 2017, a warranty deed drafted by Defendants, signed and made effective that day transferring title from Debtors to the LLC.

27. On the 5th day of September, the Title Company issued two checks as follows:

   a. Check#7207, in the amount of five thousand dollars ($5,000.00), made payable to Adrien Richemond, a copy of which is attached hereto and incorporated herein as Exhibit "A";

   b. Check #7118, in the amount of eighty seven thousand three hundred ninety two dollars and seven cents ($87,392.07) made payable to Barry E. Mukamal a copy of which is attached hereto and incorporated herein as Exhibit "B";

28. Neither of the plaintiffs received check No. 7207 nor No. 7118 or cash proceeds therefrom.

29. Wells never received the proceeds from the closing of the Equitymax loan.

30. On the 24th day of October 2017, the Chapter 13 Trustee, filed a Notice of Delinquency [DE 42 prior case) in the amount of ninety six thousand one hundred sixty six dollars and forty nine cents ($96,166.49).

31. The debtors received the delinquency notice and contacted Riskin who assured them that he would take care of its and not to worry.

32. On the 22nd day of December 2017 the Court Granted Trustee's request to dismiss [DE 44 prior case] for failure to remain current in the plan payments, and on the 26th January 2018, the Court discharged the Trustee, and closed the case [DE 47 prior case].

33. On 4th day of January 2019 the debtors contacted the undersigned law firm for assistance in stopping a foreclosure sale of their homestead property by Wells Fargo who had obtained a final Florida State Court Judgment of Foreclosure in a case styled WACHOVIA MORTGAGE (FSB) ET AL VS RICHEMOND, ADRIEN ET AL, Case No. 2009-039098-CA-01. The foreclosure sale was to occur on the 8th day of January 2019.

34. After extensive discussions with the debtors, reviewing the foreclosure litigation, the prior Chapter 13, and other documents associated with the loan from Equitymax the following as determined and action taken:

    a. The undersigned law firm was able to cancel the sale scheduled for the 8th day of January 2019 by filing an emergency motion with the foreclosure court and obtained an order rescheduling it for the 4th day of March 2019

    b. On the 7th day January 2019 undersigned contacted Barry E. Mukamal, a Chapter 7 Bankruptcy Panel Trustee in the Southern district of Florida to inquire whether

he or his office had received check#7118 (see Exhibit "B").

    c.  Neither Mr. Mukamal nor his office recognized the Debtors name but requested a copy of the HUD-1, and a copy of the cancelled checks which were promptly provided along with other closing documents on the subject property.

    d.  After examining the provided documents Mr. Mukamal concluded that he never received nor endorsed the alleged check (See Exhibit "B"), and that the check was missing the zip code which also indicated that it was never actually mailed.

    e.  On the 24th day January 2019, Mr. Mukamal referred the matter for criminal investigation to the Office of the United States Trustee. The Criminal Referral states that Barry E. Mukamal contacted Alicia R. Buckley, Esq, as claims counsel for Fidelity National Title Group., the title insurer who stated that she received a title claim, File #647526, "alleging misappropriation of the funds which were intended to pay off a mortgage which is now foreclosing. " Ms. Buckley further identified that check#7118 was endorsed by the Broker's Company (United).

35.  The Debtors payment of the Equitymax loan was current to instant petition date.

36.  Under reasonable belief the Wells Fargo loan had been paid off from the proceeds of the Equitymax loan, the intend use of the proceeds, had not been making payments to it.

37.  On February 20, 2019 the debtors filed an Emergency Motion to Reopen Chapter 13 Case to Reinstate the prior case which was denied.

38.  Because of the action or lack thereof of all of the defendants and no other ability to right the wrongs to them of the defendants the instant chapter 13 case was filed on the 1st day of March 2019.

39. The subject property has been transferred from the LLC back to the Debtors, as their homestead property.

## COUNT 1- NEGLIGENCE AS TO STAN RISKIN

40. Plaintiffs reallege and reassert as if fully set forth in this count paragraphs 1 through 39 above.

41. Riskin at all times relevant was licensed to engage in the practice of law in the State of Florida and authorized to appear before the United States Bankruptcy Court, Southern District of Florida.

42. An attorney client relationship was formed when Plaintiffs engaged Riskin as his attorney to advise him on financial matters relating to debt and in particular in an effort to resolve a pending foreclosure of their homestead property by use of bankruptcy protection and other means described by him.

43 Negligence is the failure to use reasonable care the degree of care a careful lawyer would use in good faith and with the degree of knowledge and skill that is ordinarily possessed by other lawyers in the same or similar location as Riskin.

44. Defendant holds himself out as a specialist in foreclosure litigation and Bankruptcy proceeding pursuant to United States Code, Title 11.

45. Riskin failed to exercise reasonable care in failing to properly act or inform the Plaintiffs that:

    a. Their Chapter 13 Plan would not ultimately save their home; and

    c. Without the Plaintiff's knowledge on consent permitted an agreed order [DE 40] to be entered by the Court granting Wells Fargo's Motion to Clarify its treatment

under the confirmed Chapter 13 Plan [DE 10 prior case]. Resulting in the Plaintiffs acknowledging and additional eighty six thousand one hundred twenty one dollars and sixty three cents ($86,121.63) accrued during the pendency of the case and advanced by Wells Fargo within thirty to be paid (30) days of the date of the Order or the Court would grant an Order vacating its order valuing the subject property [DE 31 prior case].

    b. Riskin by recommending and assisting in obtaining the mortgage he recommended to replace the first mortgage on their homestead property while he knew or should have known would not resolve plaintiffs' problem.

    c. Riskin as attorney for the plaintiffs referred them to the broker to obtain a mortgage to satisfy the amount due and owing through their Chapter 13 Plan even though Riskin knew or should have known that it would not, represented them in the closing, and distribution of funds,

    d. Riskin failed to assure that the funds went to the proper party(s) which they did not.

46. Riskin's failure to use the necessary and required care damaged the Plaintiffs but competent representation would resulted in a more favorable result..

46. As approximate result of the negligence alleged herein Plaintiffs were damaged.

WHEREFORE the Plaintiffs request judgment against Riskin as follows:

a. Form damages;

b. For Costs incurred in bringing this suit;

c. For any other relief the court may deem proper.

### COUNT II - FRAUD BY MISREPRESENTATION

47. Plaintiff realleges and reasserts as if fully set forth in this count paragraphs 1 through 39 and paragraphs 41 though 46 above.

48. Defendants had superior or exclusive knowledge of the facts of a Mortgage obtained to make the final payment pursuant to plaintiffs Chapter 13 Plan.

49. Defendants had a duty to disclose material facts to the defendants as the parties were in a fiduciary or confidential relationship at the time of the transaction.

50. Defendants voluntarily disclosed some information regarding the subject transaction but failed and refused even though they had a duty to make a full disclosure.

51. In addition to and in accordance and coordination with the representations of Riskin the defendants:

    a. That the homestead property of the plaintiffs should be and was transferred to a Florida Limited Liability Company (LLC) in order to obtain a junior mortgage to funds the last payment pursuant to the Debtor's Chapter 13 Plan..

    b. The defendants failed to disclose that the transfer of the subject was a violation of the terms and conditions to the First Mortgage on the subject property.

    c. The defendants failed to disclose that payments where made to parties not reflected in the Closing Statement (Form HUD-1).

    d. The defendants failed to disclose and concealed the fact that the net proceeds of the junior mortgage were taken by the defendants and not paid is promised.

52. There existed a fiduciary or confidential relationship between the parties and the defendants' exclusive or superior knowledge of the subject matter of the transaction was withheld.

53. The defendants' intent, by suppressing the information, to mislead the plaintiffs and to induce the plaintiffs to act.

54. The plaintiffs' lack of awareness of the suppressed information, which information was not obvious to wit that the mortgage would not obtain the result promised and they would be obligated for loan for they not even receive the benefit of the funds.

55. The plaintiffs paid from their owns funds, and obligated themselves to a mortgage of which the benefits were taken by the defendants. The specific actions that the plaintiff took in reliance on the misleading representation.

56. The injuries suffered by the plaintiff as a result of his or her reliance on the defendant's misleading representation were the loss of their homestead property, the involuntary dismissal of their Chapter 13 case, the creation of an additional mortgage on their home, the costs of the additional mortgage, and the taking of the net proceeds of the additional mortgage..

57. That acts of the Defendants were knowing and intentional.

58. The Plaintiffs had to engage the unsigned attorneys and are obligated to pay them a fee.

WHEREFORE the Plaintiffs request judgment against Riskin as follows:

a. For damages;

b. For multiple damages;

c. For punitive Damages

b. For attorney fees and costs incurred in bringing this suit;

c. For any other relief the court may deem proper.

### COUNT III - CONSPIRACY TO DEFRAUD

59. Plaintiffs realleges and reasserts as if fully set forth in this count paragraphs 1 through 39 above.

60. With the advice of Riskin the Plaintiffs entered into a written agreement with the other defendants to obtain an junior mortgage of the subject property with Riskin as the attorney

61. Defendants each of them, knowingly and willfully conspired and agreed among themselves to damage the Plaintiffs by depriving them of benefits by making false statements that:

    a. The proceeds of the mortgage would be used for specific purpose to make the final payment pursuant to the Plaintiffs Chapter 13 Plan;

    b. The proceeds of the loan would bring the first mortgage current.

    c. False statements as to then use and application of the loan proceeds;

62. Plaintiffs had a right to rely on Defendants false statements and did rely on Defendants Statements.

62. The statements were made for the purpose of inducing the plaintiffs to act and their reliance by the Plaintiffs to whom the statement was made led to their injury.

64. The defendants at all time material hereto acted in coordination with each other to commit the acts complained of.

65. Pursuant to the conspiracy, and in furtherance of the conspiracy, Defendants, made their false statements resulting in dismissal of Chapter 13 case, became indebted for a junior mortgage, of which the funds were taken by the defendants and not applied as required by the loan documents.

66. As a proximate result of Defendants' wrongful acts pursuant to the conspiracy alleged

above, Plaintiffs were damaged.

67. Defendants, and each of them, did the things herein alleged oppressively and maliciously, and Plaintiff is entitled to punitive or exemplary damages.

68. The Plaintiffs had to engage the unsigned attorneys and are obligated to pay them a fee.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

a. For general damages.

b. For attorney fees and costs of suit incurred in this action.

c. For punitive or exemplary damages.

d. For other and further relief as the Court may deem proper.

## COUNT IV - CONVERSION

69. Plaintiffs realleges and reasserts as if fully set forth in this count paragraphs 1 through 39 above.

70. The plaintiffs are entitled to relief against the defendant on the following facts:

a. At all times herein mentioned, plaintiffs were, and still are, entitled to the proceeds of a mortgage loan on the subject property.

b. Defendants pursuant to a mortgage loan were to use the proceeds to pay the final payment due on the Plaintiffs' Chapter 13 Plan.

c. Instead of properly applying the proceeds of the mortgage loan the Defendants unlawfully, maliciously, wantonly, and without the consent of the plaintiffs took the proceeds of the mortgage loan for themselves.

71. Demand has been made for the return of the improperly taken funds but defendants failed and refused and continues to fail and refuse to return the property to plaintiffs.

72. As a direct and proximate result of the wrongful acts of the defendant, plaintiff has suffered damages in the sum of one hundred fifteen thousand dollars ($115,000.00), plus interest, cost, and exemplary and punitive damages.

73. At the time the defendant converted the property, defendant was guilty of actual malice in reckless disregard for plaintiffs' rights. by concealing their actions.

74. Further, after knowledge and notice of plaintiff's interest in the converted property was given to defendant, defendants

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

    a. For general damages.

    b. For attorney fees and costs of suit incurred in this action.

    c. For punitive or exemplary damages.

    d. For other and further relief as the Court may deem proper.

**COUNT V - DETERMINATION OF VALIDITY, PRIORITY OR EXTENT OF LIEN**

75. Plaintiffs realleges and reasserts as if fully set forth in this count paragraphs 1 through 39 above.

76. Plaintiffs upon the advice and cooperation of all defendants gave them a Mortgage and Promissory Note from the in the amount of one hundred fifteen thousand dollars ($115,000.00).

77. The proceeds of the loan were to be used to pay the final payment due on Plainitts'

Chapter 13 Plan.

77. The promissory note and mortgage was signed by the Plaintiffs and given to Defendants.

78. The mortgage was recorded in the Public Records of Miami-Dade county Florida as copy of which is attached hereto and incorporated herein as Exhibit "C".

79. The proceeds of the loan were without authorization or knowledge of the Plaintiffs taken by the Defendants for their own use.

80. By the failure of the Defendants to tender the proceeds of the promissory note and mortgage the Defendants obtained and advantage to which they were not entitled to wit: a secured lien against the subject property and the proceeds of the loan that created their secured position.

81. The promissory note and mortgage held by Defendants is void or avoidable for failure of consideration.

82. The Court his the authority to void the promissory note and mortgage held by defendants and direct that such claim be removed from the Public Records of Maim-Dade County Florida pursuant to 11 U.S.C. §502 and §105(a).

WHEREFORE, Plaintiff prays the Court issue and Order as follows:

a. That the Defendants file a satisfaction of the alleged mortgage in the Public Records of Miami-Dade County, Florida.

b. That the defendants return the original promissory note marked satisfied.

c. Award attorney fees and costs of suit incurred in this action.

d. For other and further relief as the Court may deem proper.

RESPECTFULLY SUBMITTED in the Southern District of Florida, Miami-Division on this   2   day of July 2019.

MARRERO, CHAMIZO, MARCER LAW, LP
Attorneys for the Plaintiff
3850 Bird Road, Suite 902
Miami, Florida 33146
Telephone: (305) 446-0163
Facsimile: (305) 444-5538

By: /S/ JULIO C. MARRERO
Julio C. Marrero, Esq.
Florida Bar No. 784664

Z:\MyFiles\Data - Old\MARRERO\Richmond vs\190625  complaint.wpd
June 28, 2019 (2:43pm)